THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Criminal No. 06-125 (RBW) |
| ) | |
| VAVA PIERRE ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.  Introduction**

The Defendant, through his undersigned counsel, respectfully submits this memorandum to aid the Court in the sentencing of Mr. Pierre.  Mr. Pierre requests the Court sentence him to a period of not more than 78 months.

**II.  Advisory Guideline Calculations[1]/Statutory Framework**

On July 27, 2006, Mr. Pierre pled guilty to *Count Two*, of a two count indictment charging him with Hostage Taking in violation of 18 U.S.C.§1203 (a).  There is no mandatory minimum.  The statutory maximum is life.

The guidelines base offense level for this offense is level 32 pursuant to U.S.S.G. §2A4.1(a).  Mr. Pierre merits a 3 level reduction for acceptance of responsibility pursuant to U.S.S.G.§3E1.1(b).  No other upward or downward adjustments apply.  Mr. Pierre objects to any increases for role and contends that, all three involved in the kidnapping in question had equal culpability, each taking on different actions to further the crime.

---

[1] These findings are not consistent with those included in the pre-sentence report.  The pre-sentence report upward adjusted Mr. Pierre's base offense by two levels for role pursuant to U.S.S.G. §3B1.1(c).

There is no evidence put forth that Mr. Pierre orchestrated the kidnapping by himself, that he told others what to do, nor that he chose who to target. The decision of what ransom demand to make was discussed by all three men.

Mr. Pierre, as documented in the pre-sentence report has a criminal history category I. As such the guideline range for a criminal history category I and offense level 29 is 87-108.[2]

## II. Mr. Pierre's Status as a "Deportable Alien" Warrants a Downward Departure

Mr. Pierre is not a United States citizen, having been brought to the United States from his native country of Haiti, only for the purposes of facing the charges in this case. Therefore, it is inevitable that he will be deported back to Haiti where he is from.

His status as a deportable alien will cause an increase in the severity of his confinement because he will almost certainly be ineligible for the benefits of 18 U.S.C. §3624. Such secion directs the Bureau of Prisons to assure that prisoners spend part of the last 10% of their sentences (but no more than six months) under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry in the community." In *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), the United States Appellate Court for the District of Columbia found that a downward departure from the recommended range under the Sentencing Guidelines may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his departure. *See also, Lartey v. Department of Justice*, 790 F.Supp. 130

---

[2] The pre-sentence report calculates Mr. Pierre's total offense level at 31, with a resulting guideline range of 108-135 months.

(W.D. La 1992). As Mr. Pierre is not a U.S. citizen and is deportable, he will not be afforded placement of less confinement during the last 10% of his sentence, and thereby will suffer an increase in the severity of his sentence solely based on his immigration status. A departure of six months is warranted to equalize his situation.

Additionally, Mr. Pierre will most assuredly incur additional jail time while he awaits deportation. The American citizen after having completed the jail sentence will not be subject to additional incarceration for deportation proceedings and he or she will be able to resume his or her life as it had been before the incident.

### III.     Additional Sentencing Factors Pursuant to 18 U.S.C. §3553

Mr. Pierre moves this court to sentence him to not more than 78 months. A sentence above that amount would be overly punitive, unreasonable, a waste of tax payer expenditure and is not warranted in this case. In conjunction and consideration of the other 3553(a) sentencing factors the court must take into account, such a sentence is reasonable.

A Court need not impose a sentence within the guideline range. *See United States v. Booker,* 125 S.Ct. 738 (2005). The United States Sentencing Guidelines now are advisory only. *Booker,* 125 S.Ct. at 756. Mr. Pierre asserts contrary to the government's arguments in its Memorandum in Aid of Sentencing, that a straight guideline sentence, is not reasonable per se.[3] As the Supreme Court recently held, the guidelines are only one factor which the Court must consider in determining a sentence along with other enumerated factors pursuant to 18 U.S.C. §3553(a) but it is no longer required pursuant to 18 U.S.C. §3553(b) that the court impose a sentence within the guideline range. *See*

---

[3] The Supreme Court has recently granted certiorari in *Rita v. United States*, 127 S.Ct. 551 (U.S. Nov. 3, 2006), in which one of the questions at issue is whether it is "consistent with *United States v. Booker*, 543 U.S. 220 (2005), to accord a presumption of reasonableness to within Guideline sentences." *Rita, id*.

*Booker*, *Id.*, which severs and excises 18 U.S.C. §3553(b)(1) which requires courts to impose a sentence within the applicable Guideline range (absent circumstances justifying a departure).

The Court must now consider the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. §3553(a)(1). To not consider all the enumerated factors of 3553(a) at sentencing is tantamount to ignoring the *Booker* decision and makes the guidelines as binding as they were pre-*Booker*.[4] This is a violation of both the Sixth Amendment of the Constitution and the interpretation of Section 3553 adopted by the remedial majority in *Booker*.

(a) <u>Reflect seriousness of the offense and promote respect for the law, 18 U.S.C. §3553(a)(2)(A)</u>

Mr. Pierre incorporates co-defendant Charles Dorius' arguments put forth on pages 5 and 6 of his Memorandum in Aid of Sentencing.

The Hostage Taking Act, under which Mr. Pierre was charged and pled guilty, was enacted to fulfill the obligations of the United States as a signatory to the International Convention Against the Taking of Hostages, Dec. 17, 1979, T.I.A.S. No. 11,081 (the "Treaty"). *United States v. Yunis*, 681 F. Supp. 896, 905 (D.D.C. 1988) *aff'd*, 924 F.2d 1086 (D.C.Cir. 1991). The asserted purpose of the statute, along with the antecedent Convention, is to address a matter of grave concern to the international community: hostage taking as a manifestation of international terrorism. See Hostage

---

[4] The Supreme Court has also recently granted certiorari in *Claiborne v. United States*, 127 S.Ct. 551 (U.S. Nov. 3, 2006). In *Claiborne*, the question at issue is whether it is consistent with *Booker* for courts to require that substantial variances from the guidelines must be justified by "extraordinary" circumstances. *Claiborne* will address the circumstances necessary to warrant a variance from the guidelines.

Taking Convention, preamble, T.I.A.S. No. 11, 081.  231 F.3d 398, 395.

In this case, Mr. Pierre, and his co-defendant's although not involved in any type of terrorism, are caught under the rubric of the Act because of their alienage and that of the victim, the defendants being a non-United States citizens and the victim being an American.  The Act charges that "[i]t is not an offense under this section if the conduct required for the offense occurred outside the United States unless-(A) the offender or the person seized or detained is a national of the United States.  18 U.S.C. 1204(b)(A)(A).  As the Southern District of New York pointed out in *United States v. Song*, 1995 WL 736872 (S.D.N.Y. 1995), "[t]here are acts of kidnapping that would technically fit under the Hostage Taking Act but which do not have the slightest connection with international terrorism.  *Song*, at 5.  That is the case here.  Therefore, although, Mr. Pierre admitted guilt to a serious crime under the Hostage Taking Act, he was not involved in the even more serious crime of international terrorism, the Act's primary target.

Further, Mr. Pierre had no intention of kidnapping an American.  The conduct that Mr. Pierre contemplated was the kidnapping of a Haitian, a crime against his country.  He had no knowledge or forewarning that the victim was an American.  Even after the girl was taken, Mr. Pierre was not aware that she was an American citizen which could have prompted his promptly returning the girl to her home.  The girl spoke French and Creole, the official languages of Haiti, she appeared Haitian and made no mention of being an American.  Nor the statute nor the guidelines take into account a defendant's lesser *intentions* of committing the kidnapping against a non-United States citizen.

When an American is specifically targeted in a foreign country because of his or her nationality there is usually an additional goal or interest by the kidnapper, whether it

5

is to make a political statement, bring in the involvement of United States government, seek the attention of the world, have the hope of being able to demand an even greater ransom amount because an American is involved or for some other additional purpose

That is not the case here.  Mr. Pierre committed the kidnapping for purely economic reasons.  It was Mr. Pierre's great misfortune that the girl was American and that he therefore, was brought to the United States to face charges here, in a foreign land, of a foreign culture and foreign language.

Therefore, a sentence lower than the guidelines respects the law.  It takes into account the lack of intent by Mr. Pierre to harm an American but nevertheless, punishes him for the serious offense of kidnapping.  As the guidelines are no longer mandatory, a non-guideline sentence is completely within the legal boundaries of the court

    (b) <u>Personal Characteristics of the Defendant</u>

        <u>(i) prior to arrest</u>

        Mr. Pierre has suffered many hardships, including the death of his father, when Mr. Pierre was only five years old.  His mother later passed away when he was eleven years old.  His sister raised him but she did not treat him well, as she would beat him and force him to sleep in the streets.  Regardless of these unfortunate beginnings, Mr. Pierre, very early on, learned a trade in repairing bicycles and sought to support himself. Nevertheless his economic situation was not always viable and at the time of his arrest in this case, his economic situation was dire both for himself and the family he supported.

    <u>(ii) subsequent to arrest</u>

Mr. Pierre now finds himself in a foreign country, the United States.  It is difficult

for him to communicate with those around him. He feels very isolated as he does not speak English, hardly anyone speaks his native Creole, he does not know the culture and he has no friends or family he can easily reach out to. Therefore, incarceration for him, is ten times more difficult than for most others. A sentence of seventy eight months, will have a harsher impact on him, considering his personal situation than for those around him serving even greater periods of incarceration.

### V.  Conclusion

**WHEREFORE**, for the above stated reasons, any other reasons presented during the sentencing hearing, and any other reasons this Honorable Court deems relevant, Mr. Pierre respectfully requests this Honorable Court sentence him to not greater than 78 months.

Respectfully submitted,

_____
Elita C. Amato, Esq.
1211 Conn. Ave., N.W.
Suite 400
Washington, D.C.  20036
(202) 223-3210


### CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2007, this Memorandum was filed electronically, thereby being served electronically on all parties.

_____
Elita C. Amato